# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-80240-CIV-ALTMAN/Brannon

**SOUTH SPANISH TRAIL, LLC,**

    Plaintiff,

v.

**GLOBENET CABOS SUBMARINOS AMERICA, INC.,** *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** comes before the Court upon the Motion to Dismiss (the "Motion") [ECF No. 27] filed by the Third-Party Defendant, the United States of America, on April 5, 2019. That Motion argues both that the Third-Party Plaintiff, Globenet Cabos Submarinos America, Inc. ("Globenet"), fails to state a claim against the United States, and that, in any event, the Court does not have subject matter jurisdiction to hear the claim. Globenet filed its Response in Opposition (the "Response") [ECF No. 41] on May 3, 2019, and the matter ripened on May 10, 2019, when the United States filed its Reply (the "Reply") [ECF No. 43].

### The Law

Pursuant to Federal Rule of Civil Procedure 12(b), a defendant may move for dismissal of a claim based on one or more of seven specific defenses: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19. *See* FED. R. CIV. P. 12(b).

"A motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). "On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

A motion to dismiss under Rule 12(b)(1) may attack subject matter jurisdiction either facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). On a facial challenge, the Court must, as with other Rule 12(b) motions, limit its review to the factual allegations in the complaint—accepting well-pled allegations as true. *Id.* A factual attack, however, challenges "the existence of subject matter jurisdiction in fact" and requires that the Court examine materials outside of the pleadings, such as testimony, declarations, and affidavits, to ensure the proper exercise of its jurisdiction. *Id.*

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 555).

**The Facts**

In 1927, Congress enacted legislation that authorized the federal government to purchase or condemn private lands for the purpose of constructing the "Intracoastal Waterway," a submerged tract of land that runs from Trenton, New Jersey, to Brownsville, Texas. *See* Answer ¶ 8. Acting on this authority, the United States initiated condemnation proceedings in a number of

federal courts along the eastern seaboard—all with an eye towards acquiring rights-of-way over the lands through which the Intracoastal Waterway now runs. *See id.* ¶ 9. These actions were on the whole successful. As relevant here, in 1935, this Court entered a final judgment, in which it transferred to the United States the rights to a narrow strip of land in Palm Beach County, Florida (the "Subject Property"). *See id.* ¶ 10. It is undisputed that, as a part of this judgment, the prior owners of this land received "just compensation" from the federal government. *See id.*

Sixty-eight years later, in 2003, the United States, acting through the Army Corps of Engineers, granted Globenet a Consent to Easement ("Consent") over a portion of this land. *See* Answer Ex. D (the "Consent") [ECF No. 24-4]. That Consent gave Globenet a right-of-way, commensurate with the government's own right-of-way, to lay fiber optic cable over a sliver of the Intracoastal Waterway. *See* Answer ¶¶ 15–16. The Consent was subject to a number of conditions—one of which required Globenet to obtain both the consent of the State of Florida and of the owners of the property on which the Intracoastal had been built. *See* Consent ¶ 1. Globenet acquired the State's consent later in 2003, when Florida's Board of Trustees of the Internal Improvement Trust Fund granted Globenet an easement to lay fiber optic cable over the Subject Property. *See* Answer Ex. E (the "Florida Consent") [ECF No. 25-5]. Thus, as of 2003, Globenet had obtained, from both the United States and the State of Florida, the right to lay its fiber optic cable over the Subject Property.

South Spanish Trail is a Florida limited liability company that claims to have purchased the Subject Property in 2016. *See generally* Notice of Removal [ECF No. 1]. In 2018, it brought suit against Globenet in the 15th Judicial Circuit in and for Palm Beach County, alleging that Globenet has neither an interest in the Subject Property nor any right to lay its cable there. *See*

Notice of Removal Ex. 3 [ECF No. 1-3].[1] Globenet answered on December 23, 2018, and, in addition to responding to South Spanish Trail's complaint, brought its own claims against both South Spanish Trail and the United States. *See* Notice of Removal Ex. 4 [ECF No. 1-4]. On March 25, 2019, Globenet amended its Answer and Third-Party Complaint. *See* Answer [ECF No. 24].

Against the United States, Globenet asserts only what it calls a "Breach of Easement" claim. *See* Answer ¶¶ 57–61. That claim alleges that the "United States breached its easement obligations owed to Globenet," *id.* ¶ 59, and that this "breach deprived Globenet of a legitimate constitutionally protected interest," *id.* ¶ 61. Specifically, Globenet says that the United States engaged in a "taking" without just compensation, in violation of the Fifth Amendment to the U.S. Constitution. *See* Response at 9, 11.

On April 5, 2019, the United States moved to dismiss Globenet's Third-Party Complaint. *See generally* Motion. In its Motion, the United States argues both that the Court lacks subject matter jurisdiction over the claim, *see id.* at 2, and that Globenet fails to state a claim upon which relief may be granted, *see id.* at 9. Specifically, the United States says that Globenet's "Breach of Easement" claim, properly construed, "is nothing more than a breach of contract claim." Mot. at 2 (cleaned up). Then, citing *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221 (5th Cir. 1976), the United States contends that this Court lacks subject matter jurisdiction over breach of contract claims against the federal government—even where those claims seeks only specific performance. *See id.* Finally, noting that there are no set of circumstances under which Globenet could plead a viable contract claim, the United States asks this Court to dismiss Globenet's Third-Party Complaint *with prejudice*. *See id.* at 8.

---

[1] In its complaint against Globenet, South Spanish Trail raises only state-law claims. *See* Notice of Removal [ECF No. 1].

Globenet responds that it has, in fact, stated a valid Takings Clause claim under the Fifth Amendment. *See* Response at 10 ("In its amended third-party claim, Globenet asserts a federal takings claim against the United States related to the Government's breach of its obligations under the [Consent]." (citing Answer ¶¶ 57–61)). Globenet then surveys the jurisprudential record from other circuits and argues that, where a contract claim implicates a constitutional question—such as an alleged violation of the Takings Clause—a district court does have jurisdiction over that claim. *See* Response at 11 (citing *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 610 (D.C. Cir. 1992)).

**Analysis**

**I.    Contract Claims Against the United States**

The United States is generally immune from suit unless it has expressly waived that immunity by statute. *See Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). In 1976, Congress amended the Administrative Procedure Act (the "APA") so as to waive sovereign immunity for a broad range of suits that seek non-monetary relief from federal agencies or officials. *See* 5. U.S.C. § 702. But this waiver is subject to certain well-specified exceptions. Nothing in the APA, for example, "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* Similarly, the APA only waives sovereign immunity for actions "for which there is no other adequate remedy." *Id.* § 704. And it is precisely these two exceptions to the APA's waiver of sovereign immunity that bar Globenet's claim here.

In 1855, more than 100 years before the APA was amended, Congress created the United States Court of Claims to adjudicate actions for money damages against the United States. *See* 10 Stat. 612. Twenty-two years later, in 1877, Congress passed the Tucker Act, which expanded the

jurisdiction of the Court of Claims to include all "claims founded upon the Constitution of the United States or any law of Congress . . . or upon any contract, expressed or implied with the Government of the United States . . . against the United States" in excess of $1,000. *See* 24 Stat. 505. In its present form, the Court of Federal Claims—the successor to the Court of Claims—has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort" in excess of $10,000. *See* 28 U.S.C. § 1491; 28 U.S.C. § 1346.

In 1976, the old Fifth Circuit made clear that § 702 of the APA did not waive sovereign immunity for breach of contract claims against the United States—even those that seek only specific performance. *See Naylor*, 530 F.2d at 1223.[2] As such, a contract claim against the United States can be maintained only under the auspices of the Tucker Act. And, under that Act, the Court of Federal Claims has *exclusive* jurisdiction over all contract claims in excess of $10,000 against the United States. *Id.* at 1229–30.

Admittedly, twelve years after *Naylor*, the Supreme Court, in *dicta*, infused this analysis with some confusion. *See Bowen v. Massachusetts*, 487 U.S. 879 (1988). In *Bowen*, the Supreme Court acknowledged, in a footnote, that it "is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000." *Id.* at 910 n. 48. But "[t]hat assumption," the Court said, "is not based on any language in the Tucker Act." *Id*.

The Eleventh Circuit has not had occasion to reconsider *Naylor* in light of *Bowen*.[3] That

---

[2] Decisions of the former Fifth Circuit issued prior to October 1, 1981 are binding as precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).
[3] The Eleventh Circuit has cited *Bowen* only twice. In *Parker v. King*, 935 F.2d 1174 (11th Cir. 1991), the court, referring to *Bowen*'s footnote 48, held that, despite the footnote's "language, we conclude that *Bowen* does not overturn previous authority establishing the Tucker Act as the

6

said, because *Bowen* did not involve a contract claim, its holding does not require an abrogation of *Naylor*—even as it might justifiably invite some speculation about *Naylor*'s future. *Cf. Transohio*, 967 F.2d at 612 (noting that *Bowen*'s discussion of exclusive jurisdiction for Tucker Act claims was *dicta* because *Bowen* did not involve a contract claim). As such, this Court must follow *Naylor* as the governing law of this Circuit. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1301 (11th Cir. 2019) (courts must follow a decision of a prior panel of this Court even when a subsequent Supreme Court opinion weakens that decision); *accord Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (holding that courts are bound to follow a Supreme Court decision that undermines circuit precedent *to the point of abrogation*). In any event, Globenet does not argue either that *Bowen* abrogated *Naylor* or that *Naylor* is, for any other reason, not the governing law of this Circuit. In sum, then, as *Naylor* unambiguously held, the Court of Federal Claims has *exclusive* jurisdiction over contract claims—whether for specific performance or not—against the United States.

This rather straightforward conclusion does not end the analysis, however, because Globenet has not raised a standalone contract claim. Instead, Globenet has, at least at first glance, brought a constitutional claim that, it says, is grounded in contract. And, on this question—whether the district courts have jurisdiction over constitutional claims founded *ex contractu*—the federal circuits are decidedly split. *Compare Transohio*, 967 F.2d at 609 (district courts have jurisdiction over constitutional claims founded in contract), *with Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647–48 (9th Cir. 1998) (district courts do not have jurisdiction over constitutional

---

exclusive jurisdictional basis for FLSA claims against the government." *Id.* at 1177. And, in *United States v. 1461 West 42nd St., Hialeah, Fla.*, 251 F.3d 1329 (11th Cir. 2001), the court cited *Bowen*, admittedly in *dicta*, for the proposition that "claims for equitable relief, such as the return of property or rents received from property during a constitutional violation, do not impinge upon sovereign immunity." *Id.* at 1340. Neither decision controls here.

7

claims founded in contract). Adding to the degree of difficulty, this appears to be a question the Eleventh Circuit has never tackled before—and, of course, it is the question upon which Globenet's claim rests. Fortunately, this Court need not answer this question here because Globenet has failed to state a viable constitutional claim.

## II.  The Takings Clause

In Count VII of its Third-Party Complaint—the only count against the United States—Globenet avers that the United States "deprived Globenet of a legitimate constitutionally protected property right in violation of Globenet's due process rights under the United States Constitution." Answer ¶ 61. In its Response, Globenet explains that this allegation refers to what it says is a clear violation of the Fifth Amendment's Takings Clause. *See* Response at 15.

The Takings Clause proscribes the government from taking private property "for public use, without just compensation." U.S. Const. amend. V. Notably, "[i]f the government has provided an adequate process for obtaining compensation," a plaintiff suing under the Takings Clause must first exhaust his remedies under that process before filing suit in federal court. *See Horne v. Dep't of Agric.*, 569 U.S. 513, 525 (2013). "Stated differently, a Fifth Amendment claim is premature until it is clear that the Government has both taken property *and* denied just compensation." *Id.* Because the Court of Federal Claims has exclusive jurisdiction over Tucker Act claims, and given that "just compensation" refers to monetary remuneration, "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 520 (1998).

To be sure, there are exceptions to this general rule. In *Eastern Enterprises*, for example, the Supreme Court was faced with a plaintiff who claimed that the Coal Act effectuated an unconstitutional regulatory taking of its property. *See id.* at 517–20. The Court agreed. Noting

8

that the "payments mandated by the Coal Act, although calculated by a Government agency, are paid to the privately operated Combined Fund," it concluded that "it cannot be said that monetary relief against the Government is an available remedy." *Id.* at 521. Accordingly, the Court held that "the 'presumption of Tucker Act availability must be reversed where the challenged statute, rather than burdening real or physical property, requires a direct transfer of funds' mandated by the Government." *Id.* (citation omitted). Ultimately, then, the Court allowed the plaintiff to pursue, in a federal district court, a declaratory judgment action that challenged the Coal Act's statutory scheme. *Id.* at 522. In saying so, the Court found that, through the Coal Act, Congress had "withdrawn the Tucker Act grant of jurisdiction." *Id.* at 520.

More recently, the Court applied this statutory exception to a case brought under the Agricultural Marketing Agreement Act of 1937 (the "AMAA"), which requires raisin growers to turn over a percentage of their crop to the federal government or pay a fine. *See Horne*, 569 U.S. at 516. When a group of raisin growers refused to turn over their crop, the United States brought an enforcement action against them, seeking $650,000 in fines. *See id.* In an affirmative defense, the raisin growers argued that the fine constituted an unconstitutional taking. *See id.* Examining the purposes of the AMAA, the Court found that it displaced Tucker Act jurisdiction with a "comprehensive remedial scheme" that allowed raisin growers to "challenge the content, applicability, and enforcement of marketing orders." *Id.* at 527. In so holding, the Court noted that "it would make little sense to require the party to pay the fine in one proceeding and then turn around and sue for recovery of that same money in another proceeding." *Id.* at 528 (citing *Eastern Enterprises*, 514 U.S. at 520).

But, unlike the plaintiff in *Eastern Enterprises* or the raisin growers in *Horne*, Globenet has not challenged any specific statutory scheme that even arguably displaces Tucker Act

9

jurisdiction. *See Eastern Enterprises*, 524 U.S. at 517–20 (challenge under the Coal Act); *accord Horne*, 569 U.S. at 516 (challenge under the AMAA). Instead, Globenet attempts to plead "a classical 'taking,'" in which the Government has allegedly taken the property itself—not through any regulation. *See United States v. Security Indus. Bank*, 459 U.S. 70, 77 (1982). And, in classical takings, the law is pellucid: before bringing suit in federal district court, a party must first seek "just compensation" in the Court of Federal Claims. *Eastern Enterprises*, 524 U.S. at 520. Although this requirement is not "strictly jurisdictional," it is a prerequisite to Globenet's claim. *See Horne*, 569 U.S. at 526.

Because it is undisputed that Globenet did not first seek "just compensation" in the Court of Federal Claims, its Takings Clause claim is premature and must be dismissed.[4] *Cf. Ungaro-Benages v. Dresdner Bank AG*, No. 01-2547-CIV, 2003 WL 25729923, at *2 n.9 (S.D. Fla. Feb. 20, 2003) (holding that the proper remedy for a Takings Clause violation is to seek just compensation in the Court of Federal Claims), *aff'd*, 379 F.3d 1227 (11th Cir. 2004). And, without a Takings Clause claim, Globenet's Third-Party Complaint avers nothing more than a breach of contract by the United States—a claim that, under *Naylor*, Globenet can only bring in the Court of Federal Claims. *See Naylor*, 530 F.2d at 1223. In sum, Globenet has failed to state a viable constitutional Takings Clause claim, *see* FED. R. CIV. P. 12(b)(6) and this Court lacks subject

---

[4] Even had Globenet sought "just compensation" in the Court of Federal Claims, its Takings Clause claim would nevertheless fail to meet the strictures of FED. R. CIV. P. 8(a), because its complaint does not plausibly establish the elements of a Takings Clause violation. A Takings Clause claim has two elements: (1) the taking of private property for public use; (2) without just compensation. *See Horne*, 569 U.S. at 525–26. Although Globenet has arguably alleged that it maintains a proprietary interest in that portion of the Intracoastal over which it has laid its fiber optic cable, *see* Answer ¶ 61, it has made absolutely no showing that the government has taken its property, that this "taking" was for public use, or that the "taking" was without just compensation. *See generally* Answer.

matter jurisdiction to hear the remaining contract claim, *see* FED. R. CIV. P. 12(b)(1). For these reasons, Globenet's Third-Party Complaint must be dismissed.

## III. Leave to Amend

The United States asks the Court not to permit Globenet to amend its Third-Party Complaint. *See* Mot. at 7–9. In response, Globenet says, somewhat nonsensically, that it should be permitted to amend because the government's argument on this point "hinges on its *incorrect* contention that the U.S. Easement 'does not grant any property interests.'" *See* Response at 16.

But this Court's deadline to amend pleadings expired on May 14, 2019, *see* Amended Scheduling Order [ECF No. 39], Globenet has never moved to extend that deadline, and Globenet has not demonstrated "good cause" for any such extension. *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").[5] After all, even were the deadline extended, Globenet could do no more than properly allege the elements of a Takings Clause violation. But this hypothetically amended third-party complaint would inevitably still fail to state a viable Takings Clause claim because, as discussed, Globenet has not sought "just compensation" in the Court of Federal Claims.[6] The Court is therefore unpersuaded by Globenet's request for leave to amend.

And, even if Globenet were to amend its Third-Party Complaint to plead a procedural due

---

[5] South Spanish Trail, on the other hand, did file an Unopposed Motion for Extension of Time to Amend Pleadings on May 14, 2019. [ECF No. 45]. In light of the Court's ruling, however, that motion will be denied as moot.

[6] Even under the more permissive standard of FED. R. CIV. P. 15, therefore, Globenet's petition for leave to amend would be denied as futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that "the grant or denial of an opportunity to amend is within the discretion of the District Court," and concluding that leave should not be granted where, as here, it is clear from the complaint that any amendment would be futile).

11

process claim,[7] this hypothetical amendment would likewise be futile. The three elements of a procedural due process claim are: "(1) deprivation of a constitutionally protected property interest, (2) governmental action; (3) and constitutionally inadequate process." *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

Assuming *arguendo* that Globenet has a property interest in the Subject Property (an issue the Court does not reach), Globenet cannot plausibly allege that any deprivation of that property interest was due to governmental action. After all, the Consent Globenet received from the United States required Globenet both to obtain grants from the "owners of the fee" and to acquire "local consent" from the State of Florida. *See* Consent ¶ 1. South Spanish Trail, the putative, present-day "owner[] of the fee," has, by this suit, challenged Globenet's acquisition of that "consent"—a challenge that, as far as the Third-Party Complaint suggests, has absolutely nothing to do with the United States.

Throughout its papers, Globenet only once describes what it perceives as *the Government's* alleged breach of the Consent. Specifically, in its Response, Globenet claims that, "[i]n breach of its obligations under the U.S. Easement, the Government has encouraged Plaintiff's dubious title claim by advising Plaintiff that the U.S. Easement does not grant Globenet an enforceable property right to use the federal easement." Response at 9. As evidence of this so-called "encouragement," Globenet cites the United States' Motion to Dismiss [ECF No. 27], which, it goes without saying, was filed *after* Globenet filed its Third-Party Complaint [ECF No. 24]. It is almost tautological to note, however, that the averred, Government-sponsored deprivation could not possibly have

---

[7] Globenet's claim admittedly employs some of the well-trodden language of a procedural due process claim. *See* Answer ¶ 61. But its Response specifically disavows any construction of its complaint as raising anything but a Takings Clause claim. *See generally* Response.

12

actuated Globenet's claim if, as Globenet suggests, it occurred *after* Globenet's complaint was filed.[8] In any event, it is undisputed that the United States did not bring the "dubious title claim," upon which Globenet's deprivation claim so precariously rests. Indeed, Globenet appears to concede that the United States has, by acceding to Globenet's rights over the Subject Property, done just the opposite:

> Here, there has been no effort by the Government to terminate its agreement with Globenet. To the contrary, the Government has affirmed that Globenet's fiber optic cable is in the public interest and vital to national security and requires Globenet to advise it if any interruption in service will occur. ECF No. 24-1 Nor does the Government contend that Globenet has breached the parties' agreement in any way.

Response at 13–14.

In other words, Globenet has not—and cannot—identify any governmental action that led to the alleged deprivation of its property interest. To the extent that Globenet was deprived of any such interest at all, its papers suggest that it was South Spanish Trail's decision to file suit, not any action by the United States, that caused that deprivation. In short, even if the Consent did grant Globenet a protectable property interest, Globenet cannot plausibly allege that it has been deprived of that interest by the federal government. Put another way, Globenet can plead no set of facts that would constitute a viable Fifth Amendment claim against the United States.

Accordingly, to the extent that Count VII of Globenet's Third-Party Complaint alleges a constitutional claim, it is **DISMISSED for failure to state a claim**. And, insofar as County VII levies a breach of contract claim, it is **DISMISSED for lack of subject matter jurisdiction.** The

---

[8] The only other piece of evidence to which Globenet refers in support of its "deprivation" theory is an email—which Globenet does not attach—between the Army Corp of Engineers and counsel for South Spanish Trail. *See* Response at 9. But, even under Globenet's reading, that email does nothing more than lay out the parties' respective rights under the consent. What that email does not do, however, is undertake a deprivation of Globenet's rights or effectuate a taking of its property.

Clerk of Court is directed to **TERMINATE** the Third-Party Defendant, the United States of America.

### IV. Remand

The only basis for federal jurisdiction in this case was the Third-Party Complaint's claim against the United States. With the Court's dismissal of that claim, this case is little more than a state-law breach of contract action between two Florida entities. *See generally* Notice of Removal.

The supplemental jurisdiction statute provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367. The power to hear cases via pendent jurisdiction "need not be exercised in every case in which it is found to exist." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Id.* "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* The Court will follow the Supreme Court's admonition and decline to exercise its discretionary jurisdiction over the parties' remaining state-law claims here.

*******

Accordingly, the Court hereby **ORDERS and ADJDUGES** as follows:

1. The United States' Motion to Dismiss [ECF No. 27] is **GRANTED**. Globenet's Third-Party Claim against the United States is **DISMISSED** in accordance with this Order.

2. The Third-Party Defendant, the United States of America, is **TERMINATED.**

3. The case is **REMANDED** to the 15th Judicial Circuit in and for Palm Beach County, Florida.

4. The Clerk of Court is directed to **CLOSE** this case.

5. Any pending motions are **DENIED as moot.**

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of July 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record